NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JESSICA BEASTERFIELD, *Petitioner/Appellee,*

v.

RAYMOND DEL BOSQUE, *Respondent/Appellant.*

No. 1 CA-CV 25-0046 FC

FILED 12-23-2025

Appeal from the Superior Court in Maricopa County
No. FC2024-000532
The Honorable Melissa Zabor, Judge

**VACATED AND REMANDED IN PART; AFFIRMED IN PART**

COUNSEL

Defenders of Children, Phoenix
By Donna Berlinski
*Counsel for Petitioner/Appellee*

Modern Law PLLC, Peoria
By Kylie Bigelow
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Andrew J. Becke joined.

---

**B R O W N**, Judge:

¶1          Raymond Del Bosque ("Father") appeals from several rulings in the superior court's decree of dissolution. For the reasons stated below, we vacate and remand for reconsideration of the spousal maintenance award and child support orders. We affirm the supervised parenting time ruling and the award of attorneys' fees to Jessica Beasterfield ("Mother").

## BACKGROUND

¶2          Father and Mother married in 2014 and have one child, who was born later that year. The parties separated in 2017 or 2018. Mother, her parents, and the child have lived together for most of the child's life. The child has multiple medical and physical disabilities. Since at least mid-2023, Father has paid Mother $600 each month.

¶3          Mother petitioned for dissolution in January 2024 and requested temporary orders. After a hearing, the superior court issued temporary orders awarding sole legal decision-making authority to Mother and supervised parenting time up to twice a week for two hours each time to Father. Mother, or one of her family members, was to supervise one weekly visit at her home or in public, and the second visit was to take place with a professional supervisor agency. The court ordered the parties to split the cost of the professional supervisor equally. The court did not order any temporary financial support.

¶4          After a trial, the superior court awarded the parties joint legal decision-making authority with Mother having final say if the parties could not agree. The court found it was in the child's best interests to continue Father's supervised parenting time but increased it up to three hours twice a week. All parenting time was to be supervised by an agency able to assist with the child's special needs at Father's sole expense. The court also found Mother was entitled to a spousal maintenance award of $1,650 per month for 60 months. The court declined to attribute income to Mother, finding she needed to care for the child and thus calculated the $679 monthly child

support order based on Father's monthly income of $6,141.50. Despite Father's prior monthly payments of $600, the court found that Father owed $9,380 in past child support. Finally, the court awarded Mother $5,000 in attorneys' fees based on the financial disparity between the parties and Father's unreasonableness. Father timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.     Supervised Parenting Time

¶5         We review parenting time orders for an abuse of discretion. *Christopher K v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15 (App. 2013). Father argues the evidence does not support the supervised parenting time order because there was no showing unsupervised parenting time would endanger the child. We disagree.

¶6         The child has physical disabilities that impact his ability to communicate, eat, and perform routine tasks. He also has seizures and must take several daily medications. The child also participates in various therapies in medical facilities and at home.

¶7         The record shows Father had not recently spent time alone with the child and had limited experience with the child's therapies and administering medications. Because of the child's significant health issues, under the temporary orders Father could spend two hours a week with the child at Mother's home, but always in Mother's or one of her family member's presence. Father could also "have up to two hours of supervised parenting time at an agency." However, Father did not exercise supervised parenting time outside Mother's presence, which would have allowed him to show his ability to care for the child independently. Instead, Father said he could not afford to exercise parenting time with an agency, but the superior court rejected that contention, noting that Father provided no supporting evidence, especially in light of Mother's obligation to pay half the cost.

¶8         And contrary to Father's contention, the court considered his efforts to take parenting classes aimed at parents of special needs children. Even so, Father told Mother his classes did not cover all the skills he needed to care for the child. Furthermore, Mother believed Father was not fully engaged when he appeared online for some of the therapy sessions. He was listening and not observing the sessions and therefore could not see how to replicate the therapies at home. The court did not abuse its discretion in rejecting Father's claim that he could not afford the supervised

parenting time costs. We defer to the superior court's weighing of evidence and witness credibility determinations and do not reweigh conflicting evidence on appeal. *See Hurd v. Hurd,* 223 Ariz. 48, 52, ¶ 16 (App. 2009); *see also Aries v. Palmer Johnson, Inc.,* 153 Ariz. 250, 261 (App. 1987) ("The trial court is not bound to accept as true the uncontradicted testimony of an interested party.").

¶9 The record supports the court's conclusion that Father, while making some effort to improve his caregiving skills, still presented a danger to the child's physical, mental, moral, or emotional health that warranted supervised parenting time. *See* A.R.S. §§ 25-403.01(D); -403.02(D). Father has not shown the court abused its discretion.

## II.     Child Support

¶10 Father argues the court erred by attributing no income to Mother in the child support calculation and by inflating his income. We review child support awards for an abuse of discretion and accept the superior courts' findings of fact absent clear error. *Hoobler v. Hoobler,* 254 Ariz. 130, 140, ¶ 22 (App. 2022). "We review de novo the trial court's interpretation of the [Child Support] Guidelines." *Engel v. Landman,* 221 Ariz. 504, 510, ¶ 21 (App. 2009).

### A.     Mother's Income

¶11 The child support calculation is based on each parent's gross income and includes income from any source. A.R.S. § 25-320, appx., Child Support Guidelines ("Guidelines") § II.A.1.b; *Hoobler,* 254 Ariz. at 140, ¶ 23. "The gross income calculation accounts for 'all aspects of a parent's income to ensure the award is just and based on the total financial resources of the parents.'" *Hoobler,* 254 Ariz. at 140, ¶ 24 (citation and quotation omitted). The superior court attributed no income to Mother, but the evidence does not support this finding.

¶12 For two years, Mother worked a seasonal, part-time job earning $17 an hour. Mother testified that she could work part-time while the child is in school. Mother's family helps pay her expenses, and her financial affidavit included $695 as monthly income from "contributions to household living expense[s] by others."

¶13 The court disregarded Mother's actual income altogether, finding Mother's "ability to work is hampered by the hours she can work and the need to care for their child." Mother's testimony refutes the finding that Mother cannot or has not worked at all.

4

¶14        Mother argues the Guidelines allow the court to decline to attribute income to a parent when a child's unusual emotional or physical needs require that parent's presence in the home. *See* Guidelines § II.A.5.b.iii. That is correct, but the court failed to include Mother's *actual* income here. Mother historically worked limited hours and still provided the necessary care for the child. Moreover, the contributions from family members do not impact her ability to care for the child. *See Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994) (noting courts may consider recurring cash gifts as income to a parent). The court also failed to address the recurring support she receives from family members.

¶15        Even though the court had discretion not to attribute income beyond a part-time, seasonal job, it was an abuse of discretion to not include Mother's actual income. *In re Marriage of Pacific*, 168 Ariz. 460, 464 (App. 1991), is distinguishable on this basis. In that case, this court upheld the superior court's decision not to impute full-time income to a parent who worked reduced hours to care for a child; the superior court did not disregard the parent's actual part-time income. *Id.*

¶16        The superior court's error in failing to attribute income to Mother impacts the past and current child support calculations as well as the spousal maintenance calculation. The resulting changes in the current and past child support orders and spousal maintenance calculations are not *de minimis*. Accordingly, we vacate the child support and spousal maintenance orders and remand for reconsideration using Mother's actual income.

### B.        Father's Income

¶17        The superior court found that Father's income was $6,141.50 a month. Father argues the court erroneously based his income on "non-guaranteed bonuses, holiday pay, and paid time[-]off." He claims his income fluctuates and a recent pay-restructuring will require him to work overtime to maintain his current income level.

¶18        We view the evidence in the light most favorable to upholding the superior court's ruling and will affirm reasonable evidence supports it. *Boncoskey v. Boncoskey,* 216 Ariz. 448, 451, ¶ 13 (App. 2007). The court did not explain how it determined Father's income. According to Father's financial affidavit, his income as of April 2024 was $5,969, including variable bonuses. The letter from Father's employer confirmed that Father is paid hourly plus a potential bonus but offered no details. Mother provided three of Father's recent paystubs showing he earned

$32,575 for the first five months of 2024, or $6,515 a month. Father regularly worked overtime during this time.

**¶19** In determining a parent's income for child support purposes, the court may include a parent's overtime pay if it is part of that parent's regular schedule. *McNutt v. McNutt,* 203 Ariz. 28, 29–32, ¶¶ 2, 14–15 (App. 2002). Although Father suggested that overtime is not always available, he offered no evidence to refute the paystubs that showed his 2024ear-to-date income, which included overtime. He also failed to show that paid time off and holiday pay were not part of his regular compensation. The record supports the court's finding about Father's income.

## III. Spousal Maintenance

**¶20** The superior court awarded Mother spousal maintenance of $1,650 per month for five years. We affirm a spousal maintenance award if there is any reasonable evidence to support it. *Thomas v. Thomas,* 142 Ariz. 386, 390 (App. 1984). We view the evidence in a light favoring the judgment and may infer any findings needed to sustain the judgment if such findings are supported by the record and do not conflict with any express findings. *Id.* Although we are remanding for reconsideration of Mother's income, we address Father's challenges to the spousal maintenance award that will arise on remand.

**¶21** Father argues Mother was not eligible under A.R.S. § 25-319(A) because she did not show she would be unable to support herself through adequate employment. He also contends the duration was excessive because Mother could become self-sufficient sooner.

### A. Mother's Eligibility

**¶22** Under A.R.S. § 25-319(A), the superior court may award spousal maintenance if the spouse seeking support meets any one of the five eligibility factors. *In re Marriage of Cotter,* 245 Ariz. 82, 86, ¶ 10 (App. 2018). The court found that Mother (1) lacked sufficient property; (2) could not be self-sufficient, and (3) had significantly reduced her income or career opportunities to care for the child and could only work part-time while the child was in school, which limited her employment options. *See* A.R.S. § 25-319(A)(1),(2), (3).

**¶23** Father does not challenge the finding that Mother lacked sufficient property. *See* A.R.S. § 25-319(A)(1). Because a spouse is eligible if the court finds only one statutory factor under A.R.S. § 25-319(A), we affirm the eligibility finding. *See Cotter,* 245 Ariz. at 86, ¶ 10.

## B.     Duration

¶24        We reject Father's argument that the duration was not supported by the record.  Under the Spousal Maintenance Guidelines, the court lacks discretion to deviate from the duration range.  *See* A.R.S.§ 25-319, appx., Spousal Maintenance Guidelines §§ I.A ("[T]he statute does not authorize a deviation from the duration ranges."); I.D, Step 5 ("A court cannot deviate from the duration ranges under Section IV.").  The court applied the high end of the duration range.  Additional findings of fact and conclusions of law are not required if the award is within the specified range.  *Id.* at § I.D, Step 6.  Also, neither party requested findings of fact and conclusions of law under Arizona Rule of Family Law Procedure ("Rule") 82.  The court did not abuse its discretion in ordering a duration within the range.

## IV.    Father's Past Voluntary Payments

¶25        According to Father, he voluntarily paid Mother $600 a month for child support since 2021.  Mother did not dispute this, and her bank records show a $600 monthly Zelle transfer from Father from late July 2023 through February 2024.  Father claims the court erred by treating this as spousal maintenance instead of child support, which resulted in a past child support judgment of $9,380.

¶26        If the court enters a child support order, it must calculate the past child support owed, "taking into account any amount of temporary or voluntary support that has been paid." A.R.S. § 25-320(C).  Although Father claims the voluntary payments were designed as child support, he did not provide evidence of such a designation.  But Mother did not dispute the payments.

¶27        The court made no findings about these payments.  Contrary to Father's position on appeal, the court did not treat them as spousal maintenance because the court calculated the past child support obligation "based on no spousal maintenance payments to Mother by Father[.]"  And there was no order for temporary or past spousal maintenance.

¶28        The record does not indicate whether the court considered these payments or, if so, how it treated the payments.  Accordingly, we remand for the court to consider whether to credit these payments towards the past child support judgment.  Even if the court viewed the voluntary payments as spousal maintenance, as Father suggests, it must recalculate the past child support order because it did not include the $600 payment as income to Mother in calculating the past child support order.

## V.  Award of Attorneys' Fees to Mother

**¶29**        The superior court awarded Mother attorneys' fees under A.R.S. § 25-324, finding that Father has considerably more resources and acted unreasonably.  Specifically, the court noted Father's failure to exercise supervised parenting time, become more involved, and learn about the child's special needs.  The court also rejected Father's claim that he could not afford to exercise parenting time with a supervisor.  We will affirm a fee award unless the court abused its discretion.  *Magee v. Magee,* 206 Ariz. 589, 590, ¶6 (App. 2004).

**¶30**        Father erroneously contends that the court did not make sufficient findings under A.R.S. § 25-324.  Absent a request under Rule 82, express findings are not required.  *Ringar v. Ringar,* 231 Ariz. 85, 90, ¶ 20 (App. 2012) ("Because neither party requested written findings of fact or conclusions of law, we presume that the superior court found every fact necessary to support its ruling.").  And Mother is not required to show an inability to pay to support an award of attorneys' fees.  *See Magee*, 206 Ariz. at 591-92, 593, ¶¶ 12, 18.  We defer to the court's determination of Father's credibility as to the parenting time expense.  *See supra* ¶ 9.

**¶31**        The record supports the court's determination that Father acted unreasonably and that he had more financial resources than Mother. Therefore, we affirm the award of attorneys' fees to Mother.

## VI.  Attorneys' Fees and Costs on Appeal

**¶32**        Father requests an award of attorneys' fees incurred on appeal under A.R.S. § 25-324 due to the "financial imbalance between the parties" and Mother's "unreasonable defense of unsupported findings."  In our discretion, we deny his request.  But as the successful party on appeal under A.R.S. § 12-342(A), Father is awarded taxable costs subject to compliance with ARCAP 21.

## CONCLUSION

¶**33** We vacate the spousal maintenance award and the past and current child support orders. On remand, the court shall reconsider these awards based on Mother's actual income and shall address Father's voluntary payments. In all other respects, we affirm the decree.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR